UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KURT WALLACE Plaintiff

v. Civil Action No. 3:25-cv-481

FRANK BISIGNANO, ET AL. Defendants

* * * * *

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Kurt Wallace ("Wallace") brought this suit against the Social Security Administration ("SSA"), Frank Bisignano ("Bisignano") in his official capacity as the commissioner of SSA and individual capacity, and John Doe ("Doe"), an SSA employee, in his official capacity and individual capacity (collectively "Defendants"). [DE 8 at 131–32].

Before the Court are several motions. First, Wallace moves for this Court to reconsider [DE 31] its order [DE 29] granting Defendants' motion for extension of time to answer [DE 28] and extending the response date 15 days. Defendants did not respond but instead timely filed a motion to dismiss. [DE 33]. Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [DE 33]. Wallace then moved himself for extension of time to file a response [DE 35] which Defendants did not oppose [DE 38]. Wallace responded by his requested deadline [DE 39], and Defendants replied [DE 42]. Wallace moved for leave to file a sur-reply with a proposed sur-reply attached [DE 50] and Defendants responded [DE 52].

In addition, Wallace moves for release from consent to receive electronic filings by email [DE 40]. Defendants did not respond and the time for doing so has lapsed. Wallace moves to clarify [DE 41] whether Bisignano appeared before this Court in his individual capacity in filing Defendants' Motion to Dismiss. Bisignano has responded [DE 41] and Wallace replied [DE 53].

Wallace also moves to find service effected or to extend time for service on Bisignano in his individual capacity. [DE 46]. Bisignano responded [DE 51] and Wallace replied [DE 55]. And finally, Wallace moves for this Court to reconsider [DE 58] its order [DE 57] staying discovery pending resolution of Defendants' Motion to Dismiss. Defendants have responded [DE 59], and Wallace replied [DE 60].

All matters are ripe. For the reasons below, Wallace's Motion to Reconsider [DE 31] is **DENIED**, Wallace's Motion for Extension of Time [DE 35] is **GRANTED**, Defendants' Motion to Dismiss [DE 33] is **GRANTED**, Wallace's Motion for Leave to File a Sur-Reply [DE 50] is **GRANTED**, Wallace's Motion for Release from Consent to Receive Electronic Filings by Email [DE 40] is **GRANTED**, Wallace's Motion to Clarify [DE 41] is **DENIED** as moot, Wallace's Motion to Find Service Effected [DE 46] is **DENIED** as moot, and Wallace's Motion to Reconsider [DE 58] is **DENIED** as moot.

## I. BACKGROUND

Wallace is a disabled veteran who receives Social Security benefits. [DE 8 at 139]. This matter arises from Wallace's interactions with SSA regarding benefits he claims he is owed. His amended complaint alleges the SSA wrongfully reduced his benefits on several occasions. [*Id.* at 136–38]. Wallace contends that "in 2024, [Wallace] notified the SSA of improper classification of benefits as salary . . . but did not receive a substantive response." [*Id.* at 136]. Wallace also argues that in June 2025, he received a letter from SSA "threatening to deny and reduce benefits without prior adjudication." [*Id.*]. Wallace alleges that although he timely contested the threatened withholding by mailing written responses to the SSA's Timberwood Circle Office, his benefits were withheld for July and a portion of August 2025. [*Id.*]. Finally, Wallace asserts that the SSA

improperly determined his son was not a full-time student and used that classification "as grounds to reduce or withhold benefits." [*Id.* at 138].

On July 30, 2025, Wallace went to the Timberwood Circle SSA office and submitted a "Notice of Liability addressed to Frank Bisignano, alleging unlawful takings and seeking redress." [*Id.* at 137, 139].[1] Wallace returned the next day, July 31, "seeking resolution" and was served by SSA employee Doe. [*Id.* at 139]. Doe provided Wallace with information about his benefits and advised him of the availability of an appeal, which, Doe informed him, could take "3-4 weeks." [*Id.* at 139–40]. Wallace attempted to record his conversation, but Doe refused to be recorded. [*Id.* at 140]. Eventually Doe "escalated [the encounter] to security," which Wallace contends "interfered with [Wallace's] ability to create an accurate record." [*Id.* at 141].

---

[1] Wallace's amended complaint appears to assert several arguments and uses language associated with "sovereign citizen" beliefs. *Noles v. United States Internal Revenue Serv.,* No. 3:23-CV-150-TAV-JEM, 2024 WL 4899990, at *1–2 (E.D. Tenn. Nov. 26, 2024) (citing *United States v. Cook*, No. 3:18-cr-19, 2019 WL 2721305, at *1–2 (E.D. Tenn. June 28, 2019)). This includes his "Notice of Liability" which apparently references a "Fee Schedule of Harm applicable to alleged unlawful deprivation of rights and benefits." [DE 8 at 141–42]. Wallace includes a copy of the "fee schedule" with his amended complaint [DE 8-4 at 105–08], and he seeks $255,000 in damages from the Defendants in accordance with the schedule. [DE 8 at 127, 152]. As described by other courts in this Circuit, sovereign citizen pleadings are "dense, complex, and virtually unreadable," and a branch of sovereign citizen case law has grown to address the voluminous and often frivolous workload. *See* Francis X. Sullivan, *The "Usurping Octopus of Jurisdictional/Authority": The Legal Theories of the Sovereign Citizen Movement*, 199 Wis. L. Rev. 85, 796 (1999) ("Faced with mountains of paperwork, courts must choose between spending hours deciphering Sovereign Citizen arguments or dismissing them out of hand"). Thus, "Courts have repeatedly rejected, as frivolous, arguments based on the theory of sovereign citizenship" recognizing that such arguments are "a waste of court resources." *Powell v. Michigan*, No. 22-10816, 2023 WL 2154954, at *2 (E.D. Mich. Jan. 24, 2023) (internal quotation marks omitted). As a result, courts in this district and others frequently *sua sponte* dismiss sovereign citizen complaints for lack of subject matter jurisdiction or dismiss sovereign citizen complaints on this ground without extended argument. *Primero v. Barum*, No. 3:24-cv-200, 2024 WL 1543782, at *2 (W.D. Ky. Apr. 9, 2024) (dismissing sovereign citizen complaint, at screening stage, for lack of subject matter jurisdiction because "the legal theories espoused in this action are frivolous"); *Adkins v. Kentucky*, No. 3:18-mc-26, 2018 WL 6528462, at *1–2 (W.D. Ky. Dec. 12, 2018) (*sua sponte* dismissing sovereign citizen complaint for lack of subject-matter jurisdiction without further discussion); *Maddox El v. Scharf*, No. 23-10990, 2023 WL 3587538, at *1–2 (E.D. Mich. May 22, 2023) (dismissing sovereign citizen complaint at screening stage for lack of subject matter jurisdiction without further discussion). To the extent certain of Wallace's claims assert these theories, it is appropriate for the Court to dismiss on these grounds.

On the same day, rather than appealing through SSA, Wallace sued SSA, Bisignano in his official and individual capacity, and Doe in his official and individual capacity. [DE 1]. Four days later, on August 4, Wallace amended his complaint. [DE 8]. Wallace contends that he "made a good faith effort to respond timely to each correspondence [with SSA], to contest any adverse action to the extent reasonably possible, and to serve Notice of Liability for the harm suffered as a result of Defendants' conduct." [DE 8 at 140].

Wallace asks this court to review his Social Security claims, "correct" his benefits, and require SSA to pay him certain benefits. [*Id.* at 153–54]. Wallace also brings several *Bivens* claims against Bisignano and Doe for alleged deprivation of his First and Fifth Amendment rights. [*Id.* at 147–151].

## II. DISCUSSION

### A. Motion For Extension Of Time To File A Response

The Court first considers Wallace's Motion for Extension of Time to File a Response [DE 35]. Wallace seeks an extension of time through March 7, 2026 to respond to Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 6(b)(1)(A). [*Id.* at 480–81]. Defendants responded, indicating that they do not oppose Wallace's proposed extension. [DE 38 at 488].

Rule 6(b)(1)(A) provides that a court may "for good cause, extend the time with or without notice if the court acts, or if a request is made, before the original time or its extension expires[.]" Given Wallace's *pro se* status, the medical obstacles he describes [DE 35 at 481], and Defendants' lack of opposition, the Court finds good cause to grant Wallace's proposed extension. Accordingly, Wallace's Motion for Extension of Time to File a Response [DE 35] is **GRANTED**.

### B. Motions And Arguments Regarding Service Of Process

Before proceeding to Defendants' Motion to Dismiss, the Court must determine whether Bisignano has been properly served with process in his individual capacity. Wallace and Bisignano have submitted several filings on this point. [*See* DE 41; DE 45; DE 46; DE 51; DE 53; DE 55]. These filings all come after Defendants filed their Motion to Dismiss. [DE 33]. Wallace first "moves the Court for an order clarifying whether Defendant Frank Bisignano has appeared in his individual capacity and, if no such appearance exists, for entry of default against him in that capacity only." [DE 41 at 532]. Additionally, Wallace "moves this Court for an Order finding that service has been effected upon Defendant Frank Bisignano, or, in the alternative, extending time for service, compelling disclosure of a proper service address or acceptance of service, directing service by the United States Marshals Service, and taxing costs pursuant to Federal Rule of Civil Procedure 4(d)(2)." [DE 46 at 630].

Federal Rule of Civil Procedure 12(h)(1) provides that the defense of insufficient service of process is waived if it is omitted from a Rule 12 motion, such as a motion to dismiss for failure to state a claim upon which relief may be granted. Defendants' Motion to Dismiss filed on behalf of Bisignano addresses Wallace's individual capacity claims: (1) presenting arguments against Wallace's individual-capacity *Bivens* claims against Bisignano [DE 33 at 406–13], and (2) asking the Court to dismiss Wallace's complaint "in its entirety," including Wallace's individual-capacity claims against Bisignano [*Id.* at 414]. As a result, the Court concludes that Bisignano, by moving to dismiss the individual-capacity claims against him for failure to state a claim without raising insufficiency of service, waived the defense.

Furthermore, service of process does not appear to be meaningfully at issue. Bisignano has twice indicated that "the SSA's Office of General Counsel will accept such service of [Wallace's] Amended Complaint and summons on behalf of [Bisignano], in his individual capacity . . . . If

[Wallace] does this, it should cure any deficiencies in service[.]" [DE 51 at 815; *see also* DE 45 at 628, n.8]. Bisignano has also clearly indicated an interest in the Court resolving the merits of the individual-capacity claims in Defendants' Motion to Dismiss. [DE 45 at 622, n.1, ("As presented in the Defendants' Motion to Dismiss, Doc. 33, any such claims [by Wallace] are not viable."); DE 51 at 814, ("Despite these shortcomings [in service of process], and even though [Wallace] does not have any viable legal claim against [Bisignano] in his individual capacity . . . .")].

Accordingly, Wallace's Motion to Clarify [DE 41] is **DENIED** as moot and Wallace's Motion to Find Service Effected [DE 46] is **DENIED** as moot based Bisignano's lack of opposition, his appearance before the Court and the assertions in Defendants' motion to dismiss.

C. **Defendants' Motion To Dismiss**

1. *Wallace's Sur-Reply*.

Under this Court's Local Rules, sur-replies are neither contemplated, nor permissible. W.D. Ky. L.R. 7.01. Similarly, "the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, [but] such filings may be allowed in the appropriate circumstances. *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)). One appropriate circumstance is "'[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Id.* The Court may also consider sur-replies when the plaintiff is proceeding *pro se* and the defendants would not be prejudiced by such consideration because no additional arguments are promulgated. *See, e.g.*, *Moore v. Stucki*, No. 5:24-CV-142-BJB, 2025 WL 2779154, at *2 (W.D. Ky. Sept. 26, 2025) (citing *Owens v. Keeling*, 461 F.3d 763, 776 (6th Cir. 2006)) ("Although neither the Court's local rules nor the Federal Rules of Civil Procedure authorize parties to file sur-replies without leave, courts have nonetheless considered arguments raised in

such filings—especially when a plaintiff proceeds *pro se*. So the Court will consider those filings given the need to 'construe filings by *pro se* litigants liberally.'"); *see also Reynolds v. Elizabeth*, 2016 WL 1047796, *1 (W.D. Ky. Mar. 10, 2016); *Cunningham v. Carribean Cruise Line, Inc.*, 3:14-cv-01040, 2015 WL 475271, at *2 n. 2 (M.D. Tenn. Feb. 4, 2015); *Montgomery v. Wellpath Medical*, at *4 (M.D. Tenn. Jul. 24, 2024) (quoting *In re: Firstenergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 599 (6th Cir. 2004). "As many courts have noted, '[s]ur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (quoting *In re Enron Corp. Sec.*, 465 F. Supp. 2d 687, 691 n.4 (S.D. Tex. 2006)) (additional citation omitted).

Whether to permit a party to file a sur-reply is a matter left to the trial court's discretion. *Key*, 551 F. App'x at 264 (citing *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010); *Tanielian v. DaimlerChrysler Corp.*, 108 F. App'x 386, 387 (6th Cir. 2004))."The Sixth Circuit has held that a district court does not abuse its discretion in denying leave to file a sur-reply where the opposing party's reply did not raise any new legal arguments or introduce new evidence." *Id.*; *see, e.g.*, *Key*, 551 F. App'x at 265 (holding that district court's denial of motion to file sur-reply was not abuse of discretion due to lack of new arguments raised in reply and six-month delay between filing of reply and motion for sur-reply).

Here, Defendants' Motion to Dismiss included arguments as to why Wallace's *Bivens* claims against Bisignano and Doe were not viable. [DE 33 at 406–14]. Wallace responded but did not address or rebut these arguments [DE 39], and Defendants correctly noted in their reply that this Court could treat Wallace's failure to respond as conceding his *Bivens* claims. [DE 42 at 548] *See also Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019) ("[I]t is well

understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (quoting *Rouse v. Caruso*, No. 6-cv-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011)) (internal quotation marks omitted). Wallace moved for leave to file a sur-reply, arguing that he did not intend to concede his *Bivens* claims and seeking the opportunity to argue for their validity. [DE 50 at 675]. Upon review of Wallace's proposed sur-reply, the Court concludes that it does not substantially alter the issues before the Court, nor does the Defendants' lack of opportunity to respond to Wallace's argument prejudice the Defendants. Given Wallace's *pro se* status and in the interest of a complete resolution of this matter, Wallace's Motion for Leave to File a Sur-Reply [DE 50] is **GRANTED**, and the Court will consider Wallace's proposed sur-reply.

2. *Motion to Dismiss Standard.*

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard does not "impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

The plaintiff's complaint must "contain either direct or inferential allegations with respect to all material elements necessary to sustain recovery under some viable legal theory." Bick*erstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quoting *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007)). Dismissal under Rule 12(b)(6) is warranted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

Because a motion to dismiss challenges the sufficiency of the pleadings, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Rather, to determine whether the plaintiff set forth a "plausible" claim, the Court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), this duty to be less stringent "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

3. *Wallace's Social Security-Based Claims*.

Judicial review of Social Security claims is governed by 42 U.S.C. §§ 405(g) and 405(h). Section 405(g) provides that

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Section 405(h) further provides that

> [t]he findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

The Sixth Circuit has held that there are three conditions which must be satisfied to obtain judicial review under § 405(g): "(1) a final decision of the Secretary after a hearing; (2) commencement of a civil action within sixty days after the mailing of notice of such decision, or within such additional time as the Secretary may permit; (3) filing of the action in the appropriate district court." *Willis v. Sullivan*, 931 F.2d 390, 396 (6th Cir. 1991). Outside of the path provided for in § 405(g), § 405(h) "prevent[s] [judicial] review of decisions of the Secretary[.]" *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975). In other words, § 405(h) "guarantee[s] that the administrative exhaustion will be required[.]" *Willis*, 931 F.2d at 396 (quoting *Salfi*, 422 U.S. at 757). Furthermore, the Supreme Court has interpreted § 405(h)'s reach (the language "claim arising under") "quite broadly to include any claims in which both the standing and the substantive basis for the presentation of the claims is the Social Security Act." *Heckler v. Ringer*, 466 U.S. 602, 615 (1984).

The Sixth Circuit has instructed that § 405(g)'s first requirement, that there be a "final decision," requires that "[f]irst, a claim for benefits must be presented to the Secretary" and "[s]econd, the decision must be final in that the claimant has exhausted the administrative remedies prescribed by the Secretary." *Willis*, 931 F.2d at 396. These administrative remedies proceed as follows:

> First, a claimant is entitled to an initial determination of disability. 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503. Secondly, if dissatisfied, the claimant may request a *de novo* reconsideration of that determination. 20 C.F.R. §§ 404.907–404.921. Third, if still dissatisfied, the claimant is entitled to an evidentiary hearing and a *de novo* review before an ALJ. 42 U.S.C. § 405(b); 20 C.F.R. §§ 404.929–404.961. Fourth, the claimant may take an appeal to the Appeals Council. 20 C.F.R. §§ 404.967–404.983. The claimant may then seek judicial review in federal district court. 42 U.S.C. § 405(g). Day, 467 U.S. at 106–07. Thus, for purposes of the finality requirement of § 405(g), a claim becomes final after the Appeals Council renders its decision.

*Id.* at 397.

Wallace's amended complaint describes three instances when he alleges SSA incorrectly reduced or withheld his benefits: (1) the 2024, improper classification of his benefits as salary [DE 8 at 136]; (2) the June 30, 2025 letter from SSA "threatening to deny and reduce benefits" [*Id.*]; and (3) the July 2025 improper classification of his son as not being a full-time student and the resulting reduction of his benefits. [*Id.*].

Defendants now move for dismissal of Wallace's Social Security-based claims because Wallace failed to exhaust administrative remedies as required by § 405(g), [DE 33 at 399–401], arguing that Wallace fails to demonstrate that he "obtained a final decision of the Commissioner as required for judicial review under 42 U.S.C. § 405(g)." [*Id.* at 400]. In response, Wallace contends he "submitted written requests for reconsideration and objections . . . and pursued administrative relief through the channels SSA provided," but he concedes that he has not obtained a final decision. [DE 8 at 145; DE 39 at 501].

Wallace filed this suit the same day, July 31, 2025, that he was advised of the availability of an SSA appeal. [DE 8 at 140]. Wallace argues that the reason for his lack of a final decision is that "the agency failed to timely log, process, and adjudicate [Wallace's] filings[.]" [DE 39 at 499, 501, ("[Wallace] . . . alleges that the agency's own non-processing and record failures prevented the administrative mechanism from producing the very [final] decision Defendant[s] now assert[] is judicially required.")]. While Wallace briefly lists several reasons why exhaustion should be excused in his amended complaint [DE 8 at 145], his response elaborates on only two: first, that exhaustion should be excused because SSA failed to provide him the process required for him to obtain a final decision, and second, that he has given SSA notice of his "objections" which constitutes "constructive exhaustion." [DE 39 at 501, 511–12].

Wallace provides no case law to support this argument that failure to provide the process required to obtain a final decision should excuse his lack of exhaustion and the Court cannot find any. [See DE 39 at 501–02; DE 50-3 at 687–88]. Other courts which have encountered allegations that SSA has failed to provide claimants with required procedure have not then reviewed the merits of the claimant's claim but have instead considered whether mandamus was appropriate to compel SSA to provide the required procedure. *See, e.g.*, *Dietsch v. Schweiker*, 700 F.2d 865 (2d Cir. 1983), abrogated on other grounds by *Smith v. Berryhill*, 587 U.S. 471 (2019) ("We have found that 28 U.S.C. § 1361, which authorizes an action in the nature of mandamus, provides jurisdiction to review otherwise unreviewable procedural issues not related to the merits of a claim for benefits."); *Weiss v. Sec'y of U.S. Dept. of Health and Hum. Servs.*, 859 F.Supp. 58, 62 (E.D. Ny. 1994) (holding that mandamus was appropriate to compel hearing on whether plaintiff had made a timely request for reconsideration when plaintiff had no other avenue for relief); *but see Heckler*

*v. Day*, 467 U.S. 104 (1984) (holding that a federal court may not issue an injunction imposing mandatory deadlines on SSA's adjudication of disputed disability claims).

While neither the Supreme Court nor the Sixth Circuit has ruled on whether § 405(h) bars mandamus jurisdiction over claims arising under the Social Security Act, both courts have emphasized that mandamus cannot be used to evade the process prescribed in § 405(g) and receive premature district court review of the merits of a claim. *See Heckler v. Ringer*, 466 U.S. 602, 616–17 (1984) ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty. . . . Here respondents clearly have an adequate remedy in § 405(g)[.]") (internal citations omitted); *Slone v. Sec'y of Health & Hum. Servs.*, 825 F.2d 1081, 1083 (6th Cir. 1987) ("Where the Social Security claimant's mandamus petition is essentially one seeking the payment of benefits, the claimant must establish either that he exhausted, or that he should be excused from exhausting, the avenue of direct appeal provided by 42 U.S.C. § 405(g)"). The Supreme Court has emphasized repeatedly in this context the importance of allowing SSA to fully review a claim before review by a district court. *See, e.g.*, *Smith v. Berryhill*, 587 U.S. 471, 488 (2019) ("Fundamental principles of administrative law . . . teach that a federal court generally goes astray if it decides a question that has been delegated to an agency if that agency has not first had a chance to address the question."); *Salfi*, 422 U.S. at 765 ("Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.").

Here, Wallace does not ask this Court to issue a writ of mandamus directing SSA to provide him with the required procedures. [DE 8 at 152–55]. Wallace instead asks this Court to rule on the merits of his Social Security-based claims and require SSA to "correct" its benefits payments to Wallace. [*Id.* at 153–54]. Given that Wallace does not seek mandamus relief from this Court and that mandamus would not be available to provide the relief Wallace does request (that is, the payment of benefits in the absence of exhaustion), the Court need not consider whether a writ of mandamus is appropriate. *See Slone*, 825 F.2d at 1083.

Wallace also provides no case law to support his argument that his notice of his "objections" to SSA constitutes "constructive exhaustion," nor is the Court able to find any [DE 39 at 511]. While "constructive exhaustion" is notably a feature of the Freedom of Information Act, in that context it is provided for by Congress in statute. *See generally* 5 U.S.C. § 552(a)(6)(C)(i); *Louise Trauma Ctr. LLC v. United States Citizenship & Immigr. Servs.*, 147 F.4th 495, 498–99 (4th Cir. 2025). The Court cannot find any authority applying the same principle to claims arising under the Social Security Act. Accordingly, Wallace's notice to SSA does not excuse his failure to exhaust.

The "[f]ailure to exhaust administrative remedies ... is an affirmative defense, and the defendant bears the burden of pleading and proving this failure." *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008); *see also Bushong v. Del. City Sch. Dist.*, 851 F. App'x 541, 545 (6th Cir. 2021). Courts are "reluctant to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted." *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013) (citation omitted). Affirmative defenses on a Rule 12(b)(6) motion are only addressed "where 'the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief.'" *Id.* (quoting *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554–55

(6th Cir. 2012)). Here, Wallace concedes in his amended complaint and response that he has not exhausted the available administrative remedies with SSA and has no final determination. [DE 8 at 140, 145; DE 39 at 501]. Because the Court finds that his circumstances do not excuse his failure to exhaust, dismissal under Rule 12(b)(6) is appropriate.

4. *Wallace's Bivens Claims Against Bisignano and Doe.*

In its decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court recognized "an implied private right of action for damages against individual federal government officials who violate a citizen's constitutional or federal statutory rights under color of federal law." *Brown v. U.S. Dep't of Just.*, No. 3:23-CV-00072-JHM, 2023 WL 6929814, at *2 (W.D. Ky. Oct. 19, 2023) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)).

The Supreme Court has recognized *Bivens* claims in only three narrow circumstances. *See Bivens*, 403 U.S. 388 (Fourth Amendment search-and-seizure violation by federal agents); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment sex-discrimination claim by a former congressional staffer); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment inadequate care claim by a federal prisoner).

When analyzing a proposed *Bivens* claim, the Supreme Court has laid out a two-step inquiry: first, a court must ask "whether the case presents a 'new *Bivens* context'—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (citing *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017)); *see also Elhady v. Unidentified CBP Agents*, 18 4th 880, 883 (6th Cir. 2021) ("Our understanding of a 'new context' is broad. The context is new if it differs in virtually any way from the *Bivens* trilogy.") (internal citations omitted). Second, "if a claim arises in a new context, a *Bivens* remedy

is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (citing *Ziglar*, 582 U.S. at 136). This second step inquiry is a low bar—special factors exist if there "is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 496 (quoting *Ziglar*, 582 U.S. at 136) (emphasis in original).

Wallace articulates several alleged rights violations which form the basis for his *Bivens* claims.[2] First, he contends that Bisignano and Doe violated his Fifth Amendment Due Process and Takings Clause rights by "reduc[ing] and with[olding] benefits without prior notice, hearing, or clarification, and without providing adequate opportunity to be heard, as required by law." [DE 8 at 147–48]. Wallace also contends that Bisignano and Doe violated his First Amendment right "to petition and be free from retaliation" by taking "adverse and retaliatory actions—including suspending and removing Social Security benefits—in direct response to [Wallace's]" reporting of "suspected fraud, mislabeling, or other irregularities to the Consumer Financial Protection Bureau and the Office of Inspector General." [*Id.* at 149].

The Supreme Court has held that "there is no *Bivens* action for First Amendment retaliation," foreclosing Wallace's claim based on violations of his First Amendment right to be free from retaliation. *Egbert*, 596 U.S. at 499. And the Supreme Court has also determined that no "*Bivens* remedy should be implied for alleged due process violations in the denial of Social

[2] Wallace indicates in his amended complaint that "[i]nsofar as any defendant is found to have acted under color of state law, or if the Court determines that 42 U.S.C. § 1983 is applicable to any defendant or conduct, Plaintiff alternatively asserts claims under § 1983 for the same violations." [DE 8 at 149]. Section 1983 applies to persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any *State* or Territory or the District of Columbia," not to those acting under federal law. 42 U.S.C. § 1983 (emphasis added). In comparison, *Bivens* provides the "federal analogue to suits brought against state officials under [§ 1983]." *Iqbal*, 556 U.S. at 675–76. Because Wallace has given no indication why Bisignano and Doe would have acted under color of state law, the Court will only analyze his claims as *Bivens* claims.

Security disability benefits." *Schweiker v. Chilicky*, 487 U.S. 412, 420 (1998). The Supreme Court reasoned that "Congress is the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program" and that Congress had already provided an administrative structure with "meaningful safeguards or remedies for the rights of [claimants]." *Id.* at 429. Accordingly, there is no *Bivens* remedy available for Wallace's alleged violations of his due process rights in the reduction and withholding of his benefits.

Wallace's *Bivens* claim based on violations of his Fifth Amendment Takings Clause rights fails for the same reason. This claim, like his due process claim, is also based on Bisignano and Doe's alleged reduction and withholding of benefits. [DE 8 at 148]. While *Schweiker* did not expressly deal with the question of whether a *Bivens* remedy should be implied for alleged violations of the Fifth Amendment's Takings Clause in the administration of Social Security benefits, its reasoning is just as applicable. *See Schweiker*, 487 U.S. at 425. Congress's "competence at balancing governmental efficiency and the rights of individuals" in the administration of benefits provides a "rational reason . . . to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.*; *Egbert*, 596 U.S. at 496. Accordingly, a *Bivens* action is not available to Wallace to vindicate alleged violations of the Takings Clause in the administration of Social Security benefits.

Because there is no *Bivens* action available to Wallace for the rights violations he describes, the Court dismisses Wallace's *Bivens* claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Because Wallace's Social Security-based claims are barred by his failure to exhaust and because Wallace's *Bivens* claims fail to state a claim, Defendants' Motion to Dismiss is **GRANTED**.

D. **Wallace's Motions To Reconsider**

Under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." The Court has the "authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.*

1. *Wallace's Motion to Reconsider Order Granting Defendants' Motion for Extension of Time to Answer.*

Wallace moves for this Court to Reconsider [DE 31] its order [DE 29] granting Defendants' motion for extension of time to answer [DE 28]. Defendants did not respond. Wallace argues that the extension prejudices him because "SSA continues to threaten withholding of benefits based on a May 2026 end date" for Wallace's child. [DE 31 at 364]. This concern, however, does not demonstrate "manifest injustice" resulting from this Court's order granting Defendants an additional 15 days to answer. Accordingly, Wallace's Motion to Reconsider [DE 31] is **DENIED**.

2. *Wallace's Motion to Reconsider Order Staying Discovery Pending Resolution of Defendants' Motion to Dismiss.*

Wallace also moves for this Court to Reconsider [DE 58] its order [DE 57] staying discovery pending resolution of Defendants' Motion to Dismiss. Defendants responded [DE 59], and Wallace replied [DE 60]. Given that Defendants' Motion to Dismiss is granted and this action

is dismissed, there is no longer any need to engage in discovery. Accordingly, Wallace's Motion to Reconsider [DE 58] is **DENIED** as moot.

### E. Wallace's Motion for Release from Consent to Receive Electronic Filings by Email

Wallace also moves for release from consent to receive electronic filings by email [DE 40]. Wallace seeks to "rescind[] any agreement to receive court documents by email" out of a concern that the Federal Judiciary may be the victim of a cyberattack. [DE 40 at 529]. Defendants did not respond, and the time for doing so has passed.

Federal Rule of Civil Procedure 5(d)(3)(B) allows a court, by court order or by local rule, to require a *pro se* party to file electronically. This Court's Electronic Case Filing Administrative Policies and Procedures, incorporated by reference by Local Rule 5.5, provide that "a party proceeding *pro se* shall not file electronically, unless otherwise permitted by the court." Amended Electronic Case Filing Admin. Policies and Procs. 2(d).

After entering an order or judgment, the Clerk of Court must serve notice on each party. Fed. R. Civ. P. 77(d). When a party is a registered user of the court's electronic filing system, the Clerk may serve notice by filing the order on the electronic filing system. Fed. R. Civ. P. 5(b)(2)(E). Otherwise, the Clerk may serve notice according to Federal Rule of Civil Procedure 5(b), including by mailing notice to the person's last known address.

Given that this Court's Local Rules do not require a *pro se* party to make use of the electronic filing system and that the Clerk's office has indicated it is able to accommodate Wallace's preferences to not be notified via email, Wallace's motion for release from consent to receive electronic filings by email is **GRANTED** and the Clerk of Court is directed to notice Wallace by mail in accordance with Federal Rule of Civil Procedure 5(b).

## III. CONCLUSION

Having considered the parties' filings and the applicable law, and being otherwise sufficiently advised,

**IT IS ORDERED** that Wallace's Motion to Clarify [DE 41] and Motion to Find Service Effected [DE 46] are **DENIED** as moot.

**IT IS FURTHER ORDERED** that Wallace's Motion to Reconsider [DE 31] is **DENIED**.

**IT IS FURTHER ORDERED** that Wallace's Motion for Extension of Time [DE 35] is **GRANTED**.

**IT IS FURTHER ORDERED** that Wallace's Motion for Leave to File a Sur-Reply [DE 50] is **GRANTED**.

**IT IS FURTHER ORDERED** that Wallace's Motion for Release from Consent to Receive Electronic Filings by Email [DE 40] is **GRANTED** and the Clerk of Court is directed to mail all required notices to Wallace's last known address in accordance with Federal Rule of Civil Procedure 5(b).

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss [DE 33] is **GRANTED**. The Court finds that Wallace's Social Security-based claims are barred by his failure to exhaust and that his *Bivens* claims fail to state a claim. Therefore, this action is **DISMISSED**. Accordingly, Wallace's Motion to Reconsider [DE 58] is **DENIED** as moot.

Rebecca Grady Jennings, District Judge
United States District Court

September 28, 2026